The next case today is Rene Ministeri v. Reliance Standard Life Insurance Company, appeal number 21-1651 and appeal number 21-1652. Attorney Bachrach, please introduce yourself for the record and proceed with your argument. Good morning again. May it please the Court? Joshua Bachrach for Defendant Appellant, Reliance Standard Life Insurance Company, and I'd request three minutes of time for rebuttal. You may. Thank you, Your Honor. This lawsuit involves a claim for basic and supplemental life insurance benefits under an ERISA plan. Specifically, the question is whether Mr. Ministeri was still insured under the plan at the time of his death. The district court's decision in favor of coverage is contrary to the language in the policy, it's contrary to the facts in the record, and it's also contrary to this court's decision in Barenham v. Guardian Life, which was authored by Judge Selya. Therefore, it should be reversed. Yeah, but the policy, let's put that to rest right at the start, because the policy language in Barenham was materially different than the language here. The requirement for coverage in Barenham was that the insured be actively at work on a particular date. Your policy contains no language that's fairly comparable to that. So that is correct, Your Honor, but the language that is important in Barenham, and in this case, is that it said that plans could use verifiable benchmarks for coverage, and in that case, it was you had to be at the place of business. Because the policy said actively at work on a comparable language. Correct. We're not arguing that that's the benchmark. What I'm arguing is that this policy has other benchmarks. Which are? So the benchmarks in this, as the district court stated, that, well, the eligibility is you have to be active, and in the Velez case, this court meant actually working. No, no, no, wait a minute. Active is not a defined term in your policy. That is correct. And we're operating under ERISA, where any ambiguity has to be taken in favor of the insured. Agreed, Your Honor. So there's nothing in your plan that says an employee can't be active by working at home rather than by traveling around. Exactly. I entirely agree. The issue here, Your Honor, is so the big issue is whether he stopped meeting eligibility in May or August of 2014, and the district court said that to stop meeting that or to meet the eligibility, a person has to regularly work 20 hours per week, and we agree. I thought it was regularly scheduled. Is it regularly scheduled or regularly worked? The policy said regularly scheduled work week. Working. It actually says, I'm sorry, you don't seem to give much weight to the word scheduled. Well, it says working, working a minimum of 20 hours per week during their regularly scheduled work week, and what the district court said is based on the language working, etc., that means that the person has to regularly work 20 hours a week to remain eligible, and we agree with that. So the question here is does the evidence support the conclusion that Mr. Ministeri regularly worked a minimum of 20 hours per week after the first week of May? What's the unit of time over which you think we should be making that assessment? Within one day? Within a week? Within a month? Within three months? I think, well, the district court looked at it, and it's up to this court, obviously. Regularly, I think, it's not one week. More than one week? I would say it is more than one week, and what we have here is we have a period of more than two months. So we have a period of time in May. We know in May 9, 2014, he stops working because of his diagnosis. They argue he's continued to work. I'll address that, but we know that… 51 of the 52 weeks, but on the 52nd week, he doesn't do very much. Does that meet the test or does it not meet the test? He's eligible. Okay. So you can see where I'm going. I do. So how many weeks do you think it is that he is like where he's in the condition he was in my 52nd week? How many weeks does it have to be like that before you say he's not eligible? I, well, again, it's regularly work. So what does regularly mean? Excuse me. It is not regularly work. The policy language is regularly scheduled work week. That's the policy language which you have to meet, and this man had a regularly scheduled work week. Judge Selle, I respectfully disagree. It says working, working a minimum of 20 hours a week during a regularly scheduled work week. Yes. So he has to be working during that regularly scheduled work week. But you can see that he does not have to be working during that 52nd week. I entirely agree. But in this case, there's no… Okay. So what you want is some notion of relative to the whole regular schedule, even if there's periods of inactivity, that alone doesn't mean he doesn't qualify. But if the periods of inactivity are long enough, then he no longer qualifies. Correct. What I'm asking for you is how long is that and how would I know what that is from the policy, and how do I know it's clear that this was too long? Under any reasonable, my answer is under any reasonable interpretation of the facts, if a person has not worked since the beginning of May, and now you're into the first week of August, so you have June, July, August, three months, and this person hasn't regularly done it, it's not confirmed that he worked 20 hours per week during any of that time period, they have fallen out of eligibility under the terms of this policy. Three months is more than enough to say that they fell out of eligibility and that they were not proved that even during one week during that three-month stint, he worked a minimum of 20 hours per week. But we look at what the district court based its decision on, and what the district court said, well, he received a paycheck and he was considered an employee, but those aren't conditions of coverage and eligibility or benchmarks, as Judge Selye said in the other case, those aren't benchmarks for eligibility under this policy, and the district court also said, well, he submitted timesheets, but we know... Five minutes remaining, five minutes. Thank you. But we know that those timesheets are highly inaccurate, they have him working when he couldn't have, and the district court admitted that they were not accurate timekeeping methods. All that they were, were a method to continue his salary because under his medical condition, the employer wanted to do that. So what I'm saying here is we have a person who sadly, and this is a sad case, this is a tough case as Judge, or a hard case as Judge Selye said in Burnham, he had been diagnosed with class or stage four cancer. Can you, you're running out of time and I want to make sure you address the cap issue. Yeah, and I will, but if I can, I'll just briefly put this on, there's impairment of concentration. He physically could not have done this work on a regular basis, and there's no he has to be an active, I know active isn't defined, but it has a reasonable interpretation, he had to be an active vice president. He wasn't performing any of the duties as vice president, therefore he didn't meet that benchmark. But wait a minute, vice president's not a defined term either. It was to the employer, the employer said that a vice president has to do XYZ, and he did none of he was hired to do XYZ. I disagree, Judge Selye, the employer said that a vice president could not do his job from home, and a vice president had to go out in the field, 90% travel. That's in the record, your honor. If I may turn to Chief Judge Barron's comments, even if you believe, and you shouldn't, that his coverage remained until August of 2000, his eligibility remained until August of 2014, and we disagree, that only provided basic life benefits. Why? Because then the employer could pay another year's of premium, so we have now August 2015. He died October 2nd of 2015. Now there's conversion under the basic life, and he died within the conversion period, so under the terms of the policy. Before your time runs out, you answer my question, which concerns the cap. I will, I will, your honor, but I think it's important to show that there was no supplemental life coverage. Okay, so let me, you're right, let me get to that, let me, you're right, your honor, let me get to the cap issue here. The policy language states for the supplemental life that the amount of coverage will never be more than a total of five hundred thousand dollars from all RSL group life and actual death and dismemberment insurance combined. He already would have received five hundred and ninety-two thousand dollars in basic life. Am I right, just as a textual matter, that your position is that the district court's reading renders that trailing language, RSL and all the other things, surplusage, and therefore it has to be rejected. Is that the basic textual point? Correct, and this was also in the Burnham case, where Judge Selya mentioned about, you can't balkanize the language in the policy, you have to read the language as a whole, and what the district court in this case did is it took this term, then it took this, and it said, but you got however here, and when you'd start twisting and tormenting... And then just so I understand, is the idea that the cap kicks in when you are trying to rely on portability, and otherwise the cap doesn't kick in? Yes, the cap only is part of the portability provision. And could you just give me a sentence or two, what the logic of that would be? Why would it be sensible for the policy to draw that distinction based on a cap only when it's portability, but otherwise not? Because a person is no longer employed. This is group coverage, so what they're doing is, and it's allowed under RISA, you can cap coverages. So they're saying, we're already allowing this person to have any amount of basic life coverage, but for portability, if you're getting half a million dollars already, which the district court awarded in basic life, that's enough, and you're not entitled to any portability coverage, which is for the supplemental life. And if I can briefly just complete the thought on the supplemental life, is again, basic life had automatic conversion. Supplemental did not. You have to apply to portability if you die within that time. It's not automatic. You don't get it, and there was no application. The district court said there was no application, but the district court said that we waived it because we didn't mention portability in our decision letter, which is 100% wrong to require that because there was no claim. Any further questions? Thank you. All right. You have a few minutes on rebuttal, too. Yes. Thank you, Your Honor. That's what I was going to say. Thank you. Thank you, Mr. Bachrach. At this time, please mute your audio and video, and Attorney Monroe, please unmute your audio and video, and introduce yourself on the record to begin. Good morning, and may it please the court, Teresa Monroe for the appellee, Rene Ministeri. Ms. Monroe, could I ask you to start with the cap issue that we were discussing right at the end? Sure. So, the portability mentions a $500,000 cap. It's pretty clear from the language of the policy that it's actually just referring back to, it's in the record at A42, it says supplemental life, no matter how much you're porting, you can only get $500,000. It's referring to how much supplemental life insurance that you can port, not to the amount that you can port under the basic life, because basic life, you could get up to $2 million. So, it clearly just applies to the $500,000. Can you just then address the surplusage point? What is the function on your reading of that language that follows the $500,000 number? Because there's other kinds of supplemental, I mean, there's also accidental life insurance that can be ported, and that can be added to this. There's other, I think that might be just accidental life that can also be added to that, and they're saying... Textually, if you're right, there's a cap of $500,000 on the supplemental. Why are they then referring to anything else? You could just end the sentence at $500,000, couldn't you? Right, but what I was trying to say is the only other coverage that there is besides basic and supplemental, straight up supplemental, is the accidental, which is in addition to either basic or supplemental. What I'm saying is, why is that even relevant language or reference to even make if all they're trying to do is establish a cap of $500,000? That other language, I just don't understand why it's there on your reading. I don't understand why it's there either, but I think that... Well, then one possibility is maybe the reading's wrong, because if you don't adopt your reading and you adopt Reliance's reading, then that language makes sense. It doesn't make sense in the... I mean, I'm sorry, I don't have it in front of me, so I apologize, but the district court found that it didn't make sense in terms... That one provision didn't modify the other, and I think that's the correct reading of that provision, and again, I apologize. I just can't find where I have the... So I can't respond completely to that, but I do think that the supplemental life insurance, the only reason that it's referring to a $500,000 cap and then saying, and all other kinds of life insurance, is because it's also referring to whether you have this not basic, basic is covered by conversion, so it's referring to the other kind of life insurance that you could port, which is accidental life. Sorry, that didn't make sense. Do you want me to continue? Yeah, if whatever else you want to advise. I think that, I think clearly this is outside of the purview of Burnham, as we argued, but I also think that if you read the entire policy, or if you read the policy, there's no way anyone would enter into that policy if Reliance is correct, and you interpret it the way that they say, because under their interpretation, the minute somebody gets ill, becomes ill, or has a diagnosis that seems like it may become a fatal illness, they are immediately ineligible for the insurance. In fact, on the very day that they say he became ineligible, which was May 2, 2014, Mr. Ministeri was on a business trip. He became dizzy, confused. He was working. He was in New York. He came back to Boston. What do you say to their response? They're not saying, and I don't know if they really argued this way before, but they're not saying, you don't look at one day where he was inactive. You look at some reasonable period, and under any reasonable interpretation, three months of not being able to work 20 hours is enough to say you can't be understood to be working during your regularly scheduled time. Right. Well, the facts of this case show that the only way you could say he wasn't working for three hours is if you ignore all the other evidence in the record from his employer that he was. I mean, in addition to the timesheets, we have an email from his direct supervisor saying he provided valuable assistance, and he lists the things, and even in medical records, which they've gone through with his lawyers. They didn't have a medical expert do it, but they went through his medical records, and repeatedly, he says, I'm working from home. I'm working from home. There's all kinds of evidence that he was working from home. He may not have been, you know, they want to import his job description into the policy. There's no provision for that in the policy. It says we're going to go by your job description, and by the way, they read out as the district court. Just so I understand, if I'm following you, you're not disagreeing that there might be some substantial period of time where if the facts showed over three months he wasn't really working at all, that might be enough to say he doesn't comply, but you're just saying district court made a factual finding that during that three-month period, he was working the 20 hours in substantial part, even if there were particular days when he wasn't, and that factual finding we should defer to. Is that the argument? Well, my argument is if there was a specific time period under which somebody wouldn't be eligible for life insurance after, you know, if they didn't work for two or three months. Suppose the record showed they paid him a salary every week for 52 weeks, but the record also showed he submitted no time sheets and he never went to work for 51 of them. You're not saying that he qualifies then, are you? I guess it depends on why he's out. I mean, if he's out on family medical leave or something, you're saying he's not out on leave of any sort. He's just not working. I would agree that under those facts. Okay, so then what I'm saying is really what you're saying here is that there was a fact finding by the district court that he was working 20 hours a week during that three-month period enough of the time such that, I'm just trying to figure out what the, each of you seem to argue that there's some implicit amount of time in the policy that's too long of not doing any work to qualify. But each of you seem to also be of the view that there's also a minimal period of time in which you're not working that doesn't disqualify you. So I'm just trying to figure out what we're supposed to do given the text of the policy and the district court decision in trying to figure out whether he qualifies or not. Well, our position is that if the employer says that they're still working, then they're still working. And as evidence of that, they've actually pointed out at the record, A2087, which is an agreement between Reliance and the employer that it is the employer who will notify Reliance when an employee is no longer eligible. It's not the other way with no evidence at all say, oh, well, the employer just said he was working because they felt sorry for him. There's no evidence in the record of that. There's the opposite of that. And so it appears from the other part of the agreement that Reliance had with the employer that we don't have to worry about whether the employee is, I'm not talking about fraud between the employee and the employer and there's no evidence of that here, but the employer has to have a good faith basis to say that an employee is still eligible and they're supposed to notify Reliance when they're not, not the other way around, which is what happened in this case retroactively after he already died. And we're saying that that's not the way the contract works at all. And that's certainly not their agreement with the employer. What's the policy language about this regularly scheduled work week? It says full part-time means working for you for a minimum 20 hours during a person's regularly scheduled work week. Is that the language that you're talking about? Is that what the policy language is? That is what the policy language is. I would just point out that part-time is modified in the eligible class language to say fixed part-time and they read that out. But in another payment, which means the same amount of a payment every month, and I think you can read fixed part-time the same way and the district court also pointed that out in meaning the same amount of hours every week, which is what he had. That was his position. What I'm getting at is I'm looking for where the policy says that if you're an employee who has a all right, that you lose coverage or you're not within coverage if you miss a week or two weeks or four weeks or eight weeks. It seems to me that the language you just read seems to me to be ambiguous on that point and several circuits have construed that very ambiguity against reliance. Correct. Right. They have because of the absurd results that would come from that. Well, it's not even absurd results. It's just the fact that if reliance wanted to insist that he lost coverage if he didn't work a particular week or didn't work four weeks or didn't work six weeks, they could have spelled it out in the policy and ERISA says if it's ambiguous, if it's uncertain, you can screw it against the insurer. And part-time also doesn't, they could have also said part-time. They could have also said part-time means actively working and had that go back to their other defined actively at work definition. They didn't do that either. So he's importing the language of actively at work into the part-time working provision, but it's not there. I'm unless you have any other questions, I really don't have anything else. Anything else? I don't. Thank you. Thank you, Attorney Monroe. At this time, would Attorney Bachrach please unmute his audio and his video and reintroduce himself on the record to begin his three-minute rebuttal. Thank you, Joshua Bachrach for rebuttal. I would like to raise a few points. One is the employer said that he was working. They didn't say he was working 20 hours per week on any basis and I think under any interpretation, three months of not meeting the eligibility requirement falls into that category of you no longer meet it and under the policy your eligibility ends when you're no longer in an eligible class. I'd also like to point out as far as whether he was working and the district court said that his condition appeared to have improved in July so that he was able to work. The court cited to a document which appears on page 316, that actual document says that he was doing some work from home. That doesn't mean he did anywhere near 20 hours per week on any basis, especially a regular one and he also said he would like to focus now on this portability issue because the portability is not automatic and the only way that they can get supplemental life is if there's portability. There's no claim. Council never said that there was an application for the portability within 60 days as required so there was no portability. There was notice to the maybe incorrect. Wasn't there communication from here that the insurance would be extended? No, so and council raised the point about that there was the separate agreement under the policy by the way it is the employer's duty to provide the notice. There's a separate agreement which we refer to and under that once the employer provides notice that a person has left the eligible class then Reliance Standard has to provide portability and conversion notice. That notice was sent after he died because the employer breached a duty by providing the late notice to Reliance. So Reliance wouldn't know that he left, he was no longer in the eligible class without understanding or notice from the employer. So when the employer messed up and didn't provide it, that didn't extend the time for portability. Maybe it would have created a breach of fiduciary duty. The claim is waiver on your part and so the relevance of that communication is since you were perfectly able to make the argument you're now making to us then and didn't, the question you then say is no, we didn't have to do it because it was never asserted that they'd be entitled to. One response is she had some reason not to assert it given that communication and whether that's on you or not is sort of irrelevant to the waiver issue. You look at the record, you can protect yourself by raising the arguments that you can raise and that argument wasn't raised. So what's the answer to that? I disagree, your honor. We could also have said we didn't say that this was not an accidental death. If she submitted an actual claim, would that amend its payables since we didn't mention the decision letters? Of course not because it wasn't that she didn't. But the important thing here is the court said that Reliance Standard should have shared that note that it prepared saying that there was no portability coverage. That's part of the waiver the district court said, but we did share it and it's in the record that we provided a copy of the entire claim file to her during the administrative appeal and had a copy of the policy. So if she thought there was portability coverage, if she thought there was an application for portability, it's her duty to assert that as a claim or in the appeal letter, neither of which happened. In the denial of the claim, was this ground given as the denial? It was not, your honor, chief judge, because it was never a basis for the claim and it could have been. You knew she was making a claim for supplemental insurance and you knew on the dates that the only way she could get supplemental was by portability and there was no application. Right, so she did have it. She entitled to know that that's your defense to her claim for supplemental. Your honor, because there was no there was no claim for conversion either. It was automatic under the policy. I know that, but conversion is automatic. But on the supplemental, she claims it. You have a defense to it. Your defense is she hasn't applied for portability. She never asserted the defense. But your honor, she never applied for portability. She never claimed based on portability. So how could we anticipate? She applied for the supplemental. She asked for the supplemental. The only answer I could give your honor is that again, there's excellent depth. Let's do it the other way. Suppose she applied for the supplemental and you gave as your ground portability, okay? And then it turns out on appeal, you lose because we say, no, she did apply for portability. And then you say, okay, well, actually we can show she wasn't actively working. Wouldn't we say you waive that? That's a new basis. And I would say that it's a well, the big difference here is even if you accept the fact that even if you believe it should have been raised, she never met the portability requirement. But that was an example of she could never show she was actively working, but you know, too late. No, I disagree your honor. May I finish the thought your honor? Yeah, you may. Thank you. This court in Watson versus Deaconess the fourth installation of that never ending line of cases, but this court said you can't have a substantive remedy for a procedural violation. And that's what you're saying is we should have said that in the letter, but if that coverage never would have existed, the court can't award it because of some perceived procedural mistake. I appreciate your time, your honor. That concludes argument in this case, attorney Bachrach and attorney Monroe. You should disconnect from the hearing at this time.